UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISON
LEXINGTON

CRIMINAL ACTION NO. 24-cr-00047-KKC

UNITED STATES OF AMERICA                                                                  PLAINTIFF

V.                                          **PLEA AGREEMENT**

ZALAN PAUL DULIN                                                                          DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 3 of the Indictment, charging a violation of 18 U.S.C. § 2252(a)(2), knowingly receiving visual depictions of a minor engaged in sexually explicit conduct using a means or facility of interstate commerce, that is, by computer over the internet. The United States will dismiss the remaining counts at the time of sentencing.

2. The essential elements of 18 U.S.C. § 2252(a)(2) are:

> (a) The Defendant knowingly received a visual depiction;
>
> (b) The production of the visual depiction involved the use of a minor engaging in sexually explicit conduct;
>
> (c) The visual depiction is of a minor engaging in sexually explicit conduct;
>
> (d) The Defendant knew at least one of the performers in the visual depiction was a minor, and that the visual depiction was of a minor engaged in sexually explicit conduct; and
>
> (e) The visual depiction was received using a means or facility of interstate commerce.

3. As to Count 3, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On February 28, 2024, officers with the Lexington Police Department ("LPD") arrested Zalan Dulin ("Dulin" or "Defendant") for state offenses unrelated to the federal charges herein. Dulin was booked into the Fayette County Detention Center ("FCDC") and remained at FCDC until federally indicted.

(b) While investigating the state offenses, LPD seized and searched a yellow Apple iPhone with a gray and white protective case. LPD later determined that the phone belonged to Dulin. The forensic analysis of Dulin's phone also led to the discovery of child sexual abuse material ("CSAM," also referred to as "child pornography").

(c) Almost immediately upon searching the device's media, detectives located several sexually explicit videos depicting Dulin engaged in vaginal intercourse with an unidentified female. Detectives later identified the female in the video ("Victim 1," born in mid-2008) by observing jail phone calls and text messages between Victim 1 and Dulin. These monitored communications from FCDC's phone and messaging system are hereafter referred to as "jail communications." Detectives quickly gleaned from the jail communications the romantic nature of the relationship between Dulin and Victim 1. After observing the contact information associated with Victim 1's jail communications and a photo of her on the jail system, law enforcement identified Victim 1 as a minor.

(d) LPD Detectives also observed sexual exchanges between Dulin and Victim 1 on FCDC's communication system. These jail communications between Victim 1 and Dulin described previous sexual interactions between the two as well as their desire for future sexual interactions. Law enforcement also observed requests by Dulin for sexually explicit images and videos of Victim 1. After learning of Victim 1's age and observing these messages, LPD requested that FBI investigate Dulin for potential CSAM offenses.

(e) FBI reported Victim 1's continued interaction with Dulin to Child Protective Services ("CPS"). CPS visited Victim 1's home on April 8, 2024. During CPS's visit to Victim 1's home on April 8, 2024, and while CPS spoke to Victim 1's mother, Dulin called Victim 1. Victim 1 answered the phone and whispered throughout the conversation (presumably so CPS and her mother would not hear her). During the call, Victim 1 told Dulin the "CPS worker is here for me sending messages." Victim 1 added that Dulin was under investigation because "they" knew

2

about the messages. Victim 1 further advised Dulin that "they" wanted her parents to take her phone away. At that point, Dulin said "delete the videos then, delete everything."

(f) On April 25, 2024, FBI TFO Christopher Faas ("TFO Faas") obtained a federal search warrant for the phone, allowing him to specifically search for evidence relating to Victim 1 and/or CSAM. Most notably, TFO Faas observed two "series" of CSAM videos depicting Victim 1 that were captured on the phone. The first series was captured on November 28, 2023, and the second series was captured on February 12, 2024. Both series show identifying physical characteristics of Victim 1 and Dulin; both series depict sex acts between Victim 1 and Dulin; and both series were stored in the "hidden" folder on Dulin's iPhone.

(g) Subsequent investigation of Dulin and Victim 1's jail communications by FBI and LPD revealed that Dulin not only requested CSAM via the jail system, he also actually received CSAM on the system's video visiting platform on March 31, 2024; April 6, 2024; May 9, 2024; May 12, 2024; and May 30, 2024. The sexually explicit content included videos that had already been recorded that Victim 1 displayed to Dulin from another electronic device as well as "live" transmissions of sexually explicit conduct by Victim 1. The depictions of sexually explicit conduct over the video visiting platform included acts of masturbation and urination by Victim 1.

(h) The Defendant admits that he requested and knowingly received sexually explicit visual depictions of a fifteen-year-old minor, Victim 1. The Defendant admits that the production of these visual depictions involved the use of a minor engaged in sexually explicit conduct and that the visual depictions showed such conduct. The Defendant further admits that he knew that Victim 1 was a minor at the time of the aforementioned visual depictions. Finally, the Defendant admits that he used the internet, a means and facility of interstate commerce, to obtain the CSAM material from Victim 1 and that he did so in the Eastern District of Kentucky.

4. The statutory punishment for the offense is imprisonment for not less than 5 years and not more than 20 years, a fine of not more than $250,000, and a term of supervised release of not less than 5 years and up to life. A mandatory special assessment of $100.00 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea. An additional mandatory special assessment of $5,000 applies, pursuant to 18 U.S.C. § 3014, for non-indigent Defendants convicted of certain

offenses, including those in chapter 110 (which includes the offense to which the Defendant is pleading guilty). The Defendant will pay this assessment to the U.S. District Court Clerk after the sentencing hearing, in accordance with the Judgment, if the Court determines the Defendant is non-indigent and orders such assessment to be paid. Moreover, the Defendant acknowledges that, pursuant to 18 U.S.C. §2259A, an assessment per count of no more than $35,000 may apply to any person convicted of a child pornography trafficking offense. Also, mandatory restitution under 18 U.S.C. § 2259 that is not less than $3,000.00 per victim may be applied.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant stipulate to the following computation of the advisory Sentencing Guidelines calculations. The parties may object to or argue in favor of any guideline calculations not agreed to below. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2023, manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 2G2.2(c)(1), apply U.S.S.G. § 2G2.1 because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of that conduct and the application of U.S.S.G. § 2G2.1 results in a higher offense level than U.S.S.G. § 2G2.2.

    (c) Pursuant to U.S.S.G. § 2G2.1(a), the base offense level for a production count is 32.

    (d) Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), increase the offense level by 2 levels because the offense involved a minor who had not attained the age of sixteen years.

    (e) Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), increase the offense level by 2 levels because the offense involved the commission of a sex act or sexual contact.

4

(f) Pursuant to U.S.S.G. § 2G2.1(b)(6)(B), increase the offense by 2 levels because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(h) Pursuant to U.S.S.G. § 5E1.1, restitution is mandatory. The amount of restitution will be determined at sentencing or at a separate restitution hearing.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4. Further, no agreement exists as to the application of U.S.S.G. § 2G2.1(b)(4) relating to whether the material depicted sadistic or masochistic conduct, or U.S.S.G. § 3C1.1 relating to obstruction of justice.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant also waives the right to appeal any sentence that does not exceed the advisory guideline range of imprisonment, as calculated by the United States Probation Office. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant understands that after his release from prison he will be required to register as a sex offender as a condition of supervised release. The Defendant also understands that, independent of supervised release, he will be subject to federal and

state sex offender registration requirements and that those requirements may apply throughout his life. Upon release, the Defendant will be required to register with the sex offender registration agency in Kentucky and shall also register with the sex offender registration agency in any state or other jurisdiction where he resides, is employed, or is a student. The Defendant understands that he must keep his registration current and notify the sex offender registry of any changes to his name, place of residence, employment, student status, or other relevant information. The Defendant understands that he is subject to criminal penalties for failure to comply with such sex offender registration requirements.

10. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment and any other devices seized during this investigation that contain any visual depiction in violation of 18 U.S.C. § 2252. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty, pursuant to 18 U.S.C. § 2253. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing

so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to pay restitution in the amount and to the victim(s) as ordered at sentencing, pursuant to 18 U.S.C. § 3663(a)(3). The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis.

13. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the

Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional

level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 11/7/24     By: *(signature)*
Mary L. Melton
Assistant United States Attorney

Date: 11-6-24     *(signature)*
Zalan Paul Dulin
Defendant

Date: 11/6/24

_____
Andrew L. Sparks
Attorney for Defendant